**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **LEANDRA BETH SMITH** | ) | |
| | ) | **Case No. 3:25-cv-00932** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Leandra Beth Smith filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 14) and supporting memorandum (Docket No. 15), to which Defendant SSA responded (Docket No. 19) and Plaintiff replied (Docket No. 20). The parties have consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit. (Docket No. 7.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 14) is **GRANTED**.

### I.    INTRODUCTION

On April 28, 2023, Plaintiff filed an application for DIB and SSI. (Transcript of the Administrative Record (Docket No. 12) at 16).[2] In her application, Plaintiff asserted that, as of the

---

[1] This matter is before the undersigned for final disposition by consent. *See* Docket No. 7.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

alleged onset date of November 1, 2021, she was disabled and unable to work due to the following physical or mental conditions: chronic obstructive pulmonary disease ("COPD"), asthma, posttraumatic stress disorder ("PTSD"), anxiety disorder, panic disorder, bipolar, depression, heart problem, gastrointestinal reflux disease ("GERD"), and kidney stones. (AR 238.)

The claim was denied initially on September 14, 2023, and upon reconsideration on November 22, 2023. (AR 90-91, 112–13.) On May 23, 2024, Administrative Law Judge ("ALJ") David Peeples held a hearing at which Plaintiff appeared with counsel and testified. (AR 40–75.) On July 23, 2024, the ALJ denied Plaintiff's claim. (AR 16–31.) On June 16, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 2–4.) Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g). (Docket No. 1.)

## II.    THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the July 23, 2024 decision:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2.    The claimant has not engaged in substantial gainful activity since November 1, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), asthma, Wolff-Parkinson-White Syndrome, migraines, posttraumatic stress disorder (PTSD), anxiety, panic disorder, bipolar disorder and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (*i.e., lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday, sitting (with normal breaks) for a total of about six*

2

*hours in an eight-hour workday, and pushing and/or pulling consistent with lifting and/or carrying*) except she can frequently climb ramps and stairs but only occasionally climb ladders, ropes or scaffolds. She should avoid concentrated exposure to vibration and pulmonary irritants (fumes, odors, dusts, gases, poor ventilation). She can understand and remember simple and detailed instructions and procedures. She can sustain attention, concentration, and pace for simple tasks within regular tolerances including two-hour time blocks. She can interact with co-workers and supervisors sufficiently for task completion and on an occasional basis with the public (very little to one-third of the time). She can adapt to work demands and situational changes that are gradual and occasional. She can work in environments having not more than a moderate noise level (as described in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, 1993, Appendix D Environmental Conditions) and should avoid concentrated exposure to flashing lights or lighting brighter than fluorescent lighting ordinarily found in office environments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 23, 1979 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 18–31.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth,

if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B.    The ALJ's Five-Step Evaluation of Plaintiff

At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2026, and had not engaged in substantial gainful activity since November 1, 2022, her alleged onset date. (AR 18–19.) At step two, the ALJ found that Plaintiff had the following severe impairments: COPD, asthma, Wolff-Parkinson-White Syndrome, migraines, PTSD, anxiety, panic disorder, bipolar disorder and depression. (AR 19–20.) Nevertheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20–22.) At step four, the ALJ determined that Plaintiff had the RFC to perform light work

with certain exertional, non-exertional, and environmental limitations. (AR 22–29.) Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including office helper, mail clerk, and garment sorter. (AR 30–31.)

Therefore, the ALJ determined that Plaintiff was not disabled between November 1, 2022, the alleged onset date, through July 23, 2024, the date of the decision. (AR 31.)

## C.     Plaintiff's Assertion of Error

Plaintiff asserts that the ALJ failed to adequately evaluate the medical opinion evidence of consulting mental examiner Sara Kerrick, Psy. D, LP when assessing Plaintiff's RFC. (Docket No. 15 at 8–14.) Accordingly, Plaintiff asks the Court to reverse the SSA's decision and remand the matter to the SSA either for an immediate calculation and award of benefits, or for further administrative proceedings. (*Id.* at 13.)

In the ALJ's decision, he considered and determined the persuasiveness of opinions from several medical sources, including providers and state agency consultants. In particular, the ALJ found that the July 23, 2023 opinion of Dr. Kerrick was "not fully persuasive." (AR 28–29.) Dr. Kerrick provided a "psychological report" for Plaintiff, which was based on a clinical interview, mental status examination, effort testing, and direct observation during a telehealth video meeting. (AR 812–16.) Based on these assessments, Dr. Kerrick found that Plaintiff's ability to undertake the following functional capacities was affected as follows:

> None (i.e., ability to perform as well as non-disabled individuals
> - Understanding, remembering, and carrying out instructions towards performance of simple repetitive tasks appears
> - Understanding and remembering detailed instructions
>
> Moderate (i.e., severe difficulty but capacity to perform with limitations remains)
> - Interacting with the public, supervisors and coworkers
> - Accepting criticism from supervisors

6

Marked degree (i.e., unable to adequately perform)
- Carrying out simple and detailed instructions
- Performing at a consistent or reasonable pace without interruption from psychological symptoms
- Responding to change, stress, or pressure in a work environment

(AR 816.)

The ALJ discussed Dr. Kerrick's opinion as follows:

Sarah Kerrick, Psy.D., the consultative psychological examiner, opined she had no limitations in her ability to understand, remember and carry out instructions towards performance of simple repetitive tasks; as well as no limitations in her ability to understand and remember detailed instructions. She opined she had marked limitations in her ability to carry out simple instructions, carry out detailed instructions, and perform at a consistent/reasonable pace without interruption from psychological symptoms. She opined she had a moderate limitation in her ability to interact with the public, supervisors, and coworkers; and accept criticisms from supervisors. She opined she had a marked limitation in her ability to respond to changes/stress/pressures in a work environment (Exhibit B7F).

This opinion is not fully persuasive. Specifically, the marked limitations are not persuasive because they are not supported by her own findings. There is nothing suggesting she had marked limitations in her ability to carry out simple instructions or perform at a consistent/reasonable pace. Her findings indicated the claimant's attention and concentration were good. In fact, her working memory or complex attention was noted to be grossly intact. Her opinion of marked limitations in her ability to respond to changes/stress/pressure is also not supported by her findings. While the findings indicated her coping abilities were overwhelmed and her social maturity was impulsive, it was noted that she had a normal capacity for organization and planning. Her decision making appeared normal. Furthermore, she is able to take care of her special needs adult son. While she has some limited coping abilities, the evidence simply fails to reveal any marked limitations.

(AR 28–29 (emphasis added).)

In Plaintiff's motion, she argues that the ALJ's analysis of Dr. Kerrick's opinion is "improper" because the ALJ "does not adhere to the specific requirements regarding the discussion of the supportability and consistency factors." (Docket No. 15 at 9.) With respect to supportability, Plaintiff argues that the ALJ failed to address the ways in which Dr. Kerrick's opinion concerning

7

Plaintiff's marked limitations was or was not internally supported. In particular, Plaintiff points to Dr. Kerrick's findings that Plaintiff was "affected by her symptoms of panic attacks, PTSD anxiety reactivity and avoidance, and mood instability with recently depressed mood." (*Id.* at 10.) Based on this finding, Plaintiff contends that there is no basis for the ALJ's conclusion that "nothing" in Dr. Kerrick's examination "suggest[ed] that [Plaintiff] had marked limitations in her ability to carry out simple instructions or perform at a consistent/reasonable pace." (*Id.* (quoting AR 28).) As for consistency, Plaintiff argues that Dr. Kerrick's opinion was, indeed, consistent with the record, and Plaintiff provides examples of other assessments and evaluations with similar findings to those of Dr. Kerrick. (*Id.* at 11.) Plaintiff also alleges that the ALJ wrongly credited the opinion of a non-examining physician over the opinion of Dr. Kerrick, which indicates that the ALJ's evaluation was "not based on substantial evidence." (*Id.* at 12.)

In response, the SSA argues that the ALJ properly considered Dr. Kerrick's opinion. (Docket No. 19 at 7–8.) The SSA argues that the ALJ "specifically found" that Dr. Kerrick's findings did not support Dr. Kerrick's conclusion that Plaintiff had "marked" limitations in her ability to carry out simple instructions or to perform at a consistent or reasonable pace without interruption. According to the SSA, the ALJ noted that Dr. Kerrick's findings indicated that Plaintiff's attention and concentration were good. The SSA then argues: "While Plaintiff cites evidence that she believes is consistent with Dr. Kerrick's findings, Plaintiff's argument is nothing more than an attempt to have the Court reweigh the evidence. . . . The ALJ properly evaluated Dr. Kerrick's opinion using the mandatory factors and the ALJ's consideration of the factors was within the zone of choice and should be affirmed." (*Id.* at 8.)

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. Substantial evidence is defined as "more than a mere scintilla" and "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "In formulating a residual functional

capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to

assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc.*

*Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need

only articulate how the evidence in the record supports the RFC determination, discuss the

claimant's ability to perform sustained work-related activities, and explain the resolution of any

inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir.

2002).

When evaluating medical opinion evidence to formulate the RFC, the ALJ is not required

to "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based

on five categories, which include: (1) supportability, (2) consistency, (3) the provider's

relationship with the claimant, (4) the provider's specialization, and (5) other factors such as

familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a

"persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and

prior findings are "more persuasive" if the objective medical evidence and supporting explanations

that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In

assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more

consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

These two factors have been described as follows:

> In other words, supportability addresses whether a medical professional has
> sufficient justification for their own conclusions. . . . Consistency, by contrast,

9

requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at \*4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. 20 C.F.R. § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at \*14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at \*4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at \*14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at \*8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at \*11 (W.D. Tenn. July 20, 2021)).

With respect to supportability, the ALJ found that certain limitations found by Dr. Kerrick were "not supported by her own findings." (AR 28.) Specifically, the ALJ found that the "marked" limitations in Plaintiff's ability to carry out simple instructions and to perform at a consistent or

10

reasonable pace without interruption were not supported by Dr. Kerrick's findings indicating that Plaintiff's attention, concentration, memory, and complex attention were good. The ALJ also found that the "marked" limitation in Plaintiff's ability to respond to change, stress, or pressure was not supported by Dr. Kerrick's findings that Plaintiff's decision making and capacity for organization and planning were all normal.

The Court finds that the ALJ's consideration of the supportability of Dr. Kerrick's opinion was sufficient. It is clear that the ALJ found that certain of Dr. Kerrick's findings weakened the opinion that Plaintiff had certain "marked" limitations. Although Plaintiff points to other findings from Dr. Kerrick that could support "marked" limitations – including that Plaintiff had "panic attacks, PTSD anxiety reactivity and avoidance, and mood instability with recently depressed mood" (Docket No. 15 at 10) – it is not this Court's job to determine if there is evidence in favor of Plaintiff's position that she is not able to perform light work with certain limitations. *See Garner*, 745 F.2d at 387 ("This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."). This Court is limited to determining whether substantial evidence supported the ALJ's RFC. That substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. Overall, the Court finds that the ALJ provided a sufficient explanation of the supportability of Dr. Kerrick's opinion.

However, with respect to consistency, the ALJ largely failed to indicate whether he found Dr. Kerrick's opinion to be consistent with other evidence in the record. The ALJ refers to only one other fact from the record when evaluating Dr. Kerrick's opinion: that Plaintiff "is able to take care of her special needs adult son." (AR 29.) As indicated in other points in the ALJ's decision, this information concerning Plaintiff's son is contained in Plaintiff's disability report (AR 237–

11

45), Plaintiff's function report (AR 259–68), and the hearing (AR 40–75). Aside from this brief statement, the ALJ does not directly compare Dr. Kerrick's findings to the findings of other providers or consultants or to any other evidence in the record. Although the ALJ discusses and summarizes the medical opinions of other providers and consultants, some of whose opinions he found more persuasive than the opinion of Dr. Kerrick, that is not enough to allow the Court to gain a meaningful understanding of why the ALJ believes Dr. Kerrick's opinion is not consistent with the record. In other words, aside from the reference to Plaintiff taking care of her son, the Court is left to wonder in what respect the limitations found by Dr. Kerrick are inconsistent with the record and the reasons why the ALJ believes this to be the case.

As it stands, the ALJ's discussion of Dr. Kerrick's opinion leaves the Court uncertain how the ALJ reached his conclusion that the opinion was not persuasive, at least with respect to the factor of consistency, which must be explained. *See* 20 C.F.R. § 404.1520c(b)(2). Accordingly, the Court cannot find that the ALJ appropriately weighed Dr. Kerrick's opinion because the ALJ failed to consider the consistency factor as required under the regulations. This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 906; *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record"). For these reasons, remand is required.

## V.    CONCLUSION

For the above stated reasons Plaintiff's motion for judgment on the administrative record (Docket No. 14) is **GRANTED** and this matter is **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this memorandum opinion.

An appropriate Order will accompany this memorandum opinion.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

13